**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HALLMARK LICENSING, LLC, | |
| Plaintiff, | Case No. 25-cv-04970 |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| Defendants. | |

**COMPLAINT**

Plaintiff Hallmark Licensing, LLC ("Plaintiff" or "Hallmark") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

## I.  JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases").  Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold products using infringing and counterfeit versions of Hallmark's federally registered trademarks, copyrighted works, or both to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Hallmark substantial injury in the State of Illinois.

## II.   INTRODUCTION

3.      This action has been filed by Hallmark to combat e-commerce store operators who trade upon Hallmark's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including greeting cards, entertainment products, and clothing, using infringing and counterfeit versions of Hallmark's federally registered trademarks and/or unauthorized copies of Hallmark's federally registered copyrighted works (collectively, the "Unauthorized Products"). Defendants create e-commerce stores operating under one or more Seller Aliases advertising, offering for sale, and selling Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Hallmark is forced to file this action to combat Defendants' counterfeiting of the registered trademarks and infringement of its registered copyrighted works, as well as to protect unknowing consumers from purchasing potentially dangerous Unauthorized Products over the internet. Hallmark has been and

continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4.      Plaintiff Hallmark Licensing, LLC is a Kansas limited liability company with its principal place of business located in Kansas City, Missouri.

5.      Since at least as early as 1949, Hallmark-related entities have used the HALLMARK mark and crown design shown below on personal expression products. Today, Hallmark uses the mark and design in connection with a variety of products and services, including greeting cards, entertainment products, clothing, gifts, and related retail store services (collectively, the "Hallmark Products"):



6.      The Hallmark brand has continued to evolve across its portfolio of businesses. Quality family entertainment started with the Hallmark Hall of Fame and lives on with the Hallmark Channel and Hallmark Movies & Mysteries cable television networks that reach millions of households with family-oriented programming.

7.      Hallmark's greeting cards continue to transform the industry with lines like Hallmark Signature, Good Mail, and Just Because.  Hallmark gift products can also be found at tens of thousands of retail outlets worldwide and online at hallmark.com.  Hallmark publishes in 30 languages, and Hallmark Products are available in more than 100 countries around the globe.

8.      Since 2017, the Hallmark Products have included the "My Friend Jesus Stuffed Doll," and since 2018, the "Mother Mary Holding Baby Jesus Stuffed Doll."  The "My Friend

3

Jesus Stuffed Doll" and "Mother Mary Holding Baby Jesus Stuffed Doll" feature Hallmark's copyrighted works (shown below).



| My Friend Jesus | Mother Mary Holding Baby Jesus |

9.     In 1984, long before Defendants' acts described herein, Hallmark introduced the character of Rainbow Brite.  Rainbow Brite began as a greeting card character and made her animated debut in the syndicated prime-time television special, "Peril in the Pits," which first aired on June 27, 1984.  Since then, Rainbow Brite has been featured in several television specials, comics, a weekly television series in 1986, and a feature-length film.  Rainbow Brite is also featured in a variety of products including online games, dolls, toys, books, and other related products (collectively, the "Rainbow Brite Products").  The Rainbow Brite Products feature Hallmark's registered RAINBOW BRITE trademarks and copyrighted works (the "Rainbow Brite Copyrighted Works").

10.     Some of the Rainbow Brite characters featured and made famous by Hallmark include:





| Violet | Murky Dismal | Lurky |
| --- | --- | --- |

11.    Collectively, the Hallmark Products and Rainbow Brite Products are referred to together herein as the "Hallmark Products."

12.    Hallmark is an industry leader for personal expression products and family entertainment and has developed a strong reputation as a supplier of high-quality products. Hallmark Products have become enormously popular, driven by Hallmark's arduous quality standards and innovative designs.  Among the purchasing public, genuine Hallmark Products are instantly recognizable as such.  The Hallmark brand has come to symbolize high quality, and Hallmark Products are renowned for their quality and reliability.

13.    Hallmark incorporates a variety of distinctive marks in its various Hallmark Products. Hallmark has registered its trademarks with the United States Patent and Trademark Office. Hallmark Products typically include at least one of Hallmark's registered trademarks. Hallmark uses its trademarks in connection with the marketing of its Hallmark Products, including the following marks which are collectively referred to as the "HALLMARK Trademarks."

6

| REGISTRATION NO. | TRADEMARK |
|---|---|
| 380,596<br>916,900<br>6,013,810<br>4,814,915<br>4,664,608<br>5,033,265<br>5,794,656 | HALLMARK |
| 7,086,740 | HALLMARK BETTER TOGETHER |
| 7,130,743 | BETTER TOGETHER |
| 525,798<br>5,794,657<br>5,858,356<br>3,634,799<br>2,457,248<br>2,469,522<br>2,469,521<br>864,077<br>657,441<br>654,790 |  |
| 821,931 |  |
| 842,461 |  |
| 2,302,403<br>5,115,753<br>3,808,509 | RAINBOW BRITE |

14.    The above U.S. registrations for the HALLMARK Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the HALLMARK Trademarks constitute *prima facie* evidence of their validity and of Hallmark's exclusive right to use the HALLMARK Trademarks pursuant to 15 U.S.C. § 1057(b). The HALLMARK Trademarks have been used exclusively and continuously by Hallmark for many years and have never been abandoned. True and correct copies of the United States Registration Certificates for the above-listed HALLMARK Trademarks are attached hereto as **Exhibit 1.**

15.    The HALLMARK Trademarks are exclusive to Hallmark and are displayed extensively on or in close connection with Hallmark Products and in Hallmark's marketing and promotional materials. Hallmark Products have become quite popular and have been extensively promoted and advertised at great expense. Hallmark Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as the industry leader in personal expression products and family entertainment. Because of these and other factors, the Hallmark name and HALLMARK Trademarks have become famous throughout the United States.

16.    The HALLMARK Trademarks are distinctive when applied to the Hallmark Products and packaging, signifying to the purchaser that the products come from Hallmark and are manufactured to Hallmark's quality standards. Whether Hallmark manufactures the products itself or contracts with others to do so, Hallmark has ensured that products bearing or sold within packaging bearing the HALLMARK Trademarks are manufactured to the highest quality standards. The HALLMARK Trademarks have achieved tremendous fame and recognition, which

has only added to the distinctiveness of the marks. As such, the goodwill associated with the HALLMARK Trademarks is of incalculable and inestimable value to Hallmark.

17.     Hallmark has expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the HALLMARK Trademarks. As a result, products bearing the HALLMARK Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Hallmark. The widespread fame, outstanding reputation, and significant goodwill associated with the Hallmark brand have made the HALLMARK Trademarks invaluable assets of Hallmark.

18.     Hallmark is the owner of the Rainbow Brite Copyrighted Works which are registered with the United States Copyright Office. The registrations include, but are not limited to, "Rainbow Brite Portfolio" (U.S. Copyright Registration No. VA0000155320), issued by the Register of Copyrights on March 26, 1984, and assigned from Hallmark Cards, Inc. to Plaintiff. Hallmark is also the owner of the copyrighted works "Plush Shepherd Toy 1.0" (U.S. Copyright Registration No. VA 0002361744), issued by the Register of Copyrights on September 8, 2023, and "Plush Shepherd Toy 2.0" (U.S. Copyright Registration No. VA 2-433-194), issued by the Register of Copyrights on January 31, 2025, both of which are assigned from Hallmark Cards, Inc. to Plaintiff (together with the Rainbow Brite Copyrighted Works, the "Hallmark Copyrighted Works"). A true and correct copy of the copyright registration certificates and deposit materials for the Hallmark Copyrighted Works are attached hereto as **Exhibit 2**.

19.     Among the exclusive rights granted to Hallmark under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Hallmark Copyrighted Works to the public.

**The Defendants**

20.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Hallmark.  On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations.  Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

21.     On information and belief, Defendants either individually or jointly own and/or operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto.  Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Hallmark to learn Defendants' true identities and the exact interworking of their counterfeit network.  If Defendants provide additional credible information regarding their identities, Hallmark will take appropriate steps to amend the Complaint.

### IV.  DEFENDANTS' UNLAWFUL CONDUCT

22.     The success of the Hallmark brand has resulted in significant counterfeiting of the HALLMARK Trademarks and copying of the Hallmark Copyrighted Works.  Consequently, Hallmark has a worldwide brand protection program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers.  In recent years, Hallmark has identified many fully interactive, e-commerce stores offering Unauthorized Products on online marketplace platforms such as Amazon, eBay, AliExpress, Walmart, Temu, and PayPal including the e-commerce stores operating under the Seller Aliases.  The Seller Aliases target consumers in this Judicial District and throughout the United States.  According to a U.S.

Customs and Border Protection ("CBP") report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights ("IPR") violations totaling over $3.3 billion, an increase of $2.0 billion from 2020.[2] Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong.[3]

23.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

24.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer

---

[2] *See Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection.
[3] *Id.*
[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "significantly enhanced vetting of third-party sellers" is necessary.
[5] *Id.* at p. 22.
[6] *Id.* at p. 39.
[7] Chow, *supra* note 4, at p. 186-87.

shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Unauthorized Products to residents of Illinois.

25. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Hallmark has not licensed or authorized Defendants to use any of its HALLMARK Trademarks or copy or distribute the Hallmark Copyrighted Works, and none of the Defendants are authorized retailers of genuine Hallmark Products.

26. Many Defendants also deceive unknowing consumers by using the HALLMARK Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the internet looking for websites relevant to consumer searches for Hallmark Products. Other e-commerce stores operating under Seller Aliases omit using the HALLMARK Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Hallmark Products.

27. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete

information to Internet based e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

28.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products.  Such seller alias registration patterns are one of many common tactics used by E-commerce store operators like Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

29.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use.  E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images.  Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

30.     E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

31.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Hallmark's enforcement.  E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Hallmark.  Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court.

32.     Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without any authorization or license from Hallmark, have knowingly and willfully used and continue to use the HALLMARK Trademarks and/or Hallmark Copyrighted Works in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the internet.

33.     Defendants' unauthorized use of the HALLMARK Trademarks and/or Hallmark Copyrighted Works in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Hallmark.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

34.     Hallmark hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

35. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered HALLMARK Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The HALLMARK Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Hallmark Products offered, sold or marketed under the HALLMARK Trademarks.

36. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the HALLMARK Trademarks without Hallmark's permission.

37. Hallmark is the exclusive owner of the HALLMARK Trademarks. The United States Registrations for the HALLMARK Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Hallmark's rights in the HALLMARK Trademarks, and are willfully infringing and intentionally using counterfeits of the HALLMARK Trademarks. Defendants' willful, intentional, and unauthorized use of the HALLMARK Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

38. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

39. Hallmark has no adequate remedy at law, and if Defendants' actions are not enjoined, Hallmark will continue to suffer irreparable harm to its reputation and the goodwill of its well-known HALLMARK Trademarks.

40.     The injuries and damages sustained by Hallmark have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

41.     Hallmark hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

42.     Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Hallmark or the origin, sponsorship, or approval of Defendants' Unauthorized Products by Hallmark.

43.     By using the HALLMARK Trademarks in connection with the Unauthorized Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

44.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

45.     Hallmark has no adequate remedy at law and, if Defendants' actions are not enjoined, Hallmark will continue to suffer irreparable harm to its reputation and the goodwill of the Hallmark brand.

## COUNT III
## COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT
## REGISTRATIONS (17 U.S.C. §§ 106 AND 501)

46.     Hallmark hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

47.     The Hallmark Copyrighted Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

48.     The Hallmark Copyrighted Works were registered in accordance with the requirements of 17 U.S.C. § 411(a). The Hallmark Copyrighted Works are protected by U.S. Copyright Registrations VA0000155320, VA0002361744, and VA 2-433-194 duly issued to Hallmark Cards, Inc., who assigned full ownership and all rights in the Hallmark Copyrighted Works to Plaintiff.  At all relevant times, Hallmark has been and still is the owner of all rights, title, and interest in the Hallmark Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

49.     The Hallmark Copyrighted Works are published on the internet and available to Defendants online.  As such, Defendants had access to the Hallmark Copyrighted Works via the internet.

50.     Without authorization from Hallmark, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced and/or made derivate works incorporating the Hallmark Copyrighted Works on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Products.  Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Hallmark Copyrighted Works.  Such conduct infringes and continues to infringe the Hallmark Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

51.     Defendants reap the benefits of the unauthorized copying and distribution of the Hallmark Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

52.     Defendants have unlawfully appropriated Hallmark's protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of the Hallmark Copyrighted Works.

53.     On information and belief, Defendants' infringement has been willful, intentional, and purposeful, and in disregard of and with indifference to Hallmark's rights.

54.     Defendants, by their actions, have damaged Hallmark in an amount to be determined at trial.

55.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Hallmark great and irreparable injury that cannot fully be compensated or measured in money.  Hallmark has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Hallmark is entitled to a preliminary and permanent injunction prohibiting further infringement of the Hallmark Copyrighted Works.

## PRAYER FOR RELIEF

WHEREFORE, Hallmark prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the HALLMARK Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Hallmark Product or is not authorized by Hallmark to be sold in connection with the HALLMARK Trademarks;

b.  reproducing, distributing copies of, making derivative works of, or publicly displaying the Hallmark Copyrighted Works in any manner without the express authorization of Hallmark;

c.  passing off, inducing, or enabling others to sell or pass off any product as a genuine Hallmark Product or any other product produced by Hallmark that is not Hallmark's or not produced under the authorization, control, or supervision of Hallmark and approved by Hallmark for sale under the HALLMARK Trademarks and/or the Hallmark Copyrighted Works;

d.  committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Hallmark, or are sponsored by, approved by, or otherwise connected with Hallmark;

e.  further infringing the HALLMARK Trademarks and/or the Hallmark Copyrighted Works and damaging Hallmark's goodwill; and

f.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Hallmark, nor authorized by Hallmark to be sold or offered for sale, and which bear any of Hallmark's trademarks, including the HALLMARK Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof and/or which bear the Hallmark Copyrighted Works;

2)  Entry of an Order that, upon Hallmark's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Amazon, Walmart, Temu, and PayPal (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the

sale of counterfeit and infringing goods using the HALLMARK Trademarks and/or which bear the Hallmark Copyrighted Works;

3) That Defendants account for and pay to Hallmark all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the HALLMARK Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Hallmark be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the HALLMARK Trademarks;

5) As a direct and proximate result of Defendants' infringement of the Hallmark Copyrighted Works, Hallmark is entitled to damages as well as Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Hallmark's election prior to any final judgment being entered, Hallmark is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) That Hallmark be awarded its reasonable attorneys' fees and costs for bringing this action pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 6th day of May 2025.

Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jennifer V. Nacht
Madeline B. Halgren
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jnacht@gbc.law
mhalgren@gbc.law

*Counsel for Plaintiff Hallmark Licensing, LLC*