IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HALLMARK LICENSING, LLC,<br><br>                Plaintiff,<br><br>   v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>                Defendants. | Case No. 25-cv-04970<br><br>**Judge Lindsay C. Jenkins**<br><br>**Magistrate Judge Heather K. McShain** |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN
RESPONSE TO MINUTE ORDER**

Pursuant to this Court's Minute Order [13], Plaintiff Hallmark Licensing, LLC ("Plaintiff") submits this supplemental memorandum addressing the propriety of joinder[1] and the opinion issued in *Wham-O Holding v. The Partnerships*. If the Court has remaining concerns about the propriety of joinder or the requested asset restraint after reviewing this Supplemental Memorandum, Plaintiff requests the opportunity to present oral argument at a hearing scheduled for the week of May 27, 2025, or later.[2]

---

[1] The Court's concern regarding joinder appears to be specific to this Case. For example, in N.D. Ill. No. 25-cv-05271, the Court entered a similar order regarding the asset restraint but did not mention joinder. If joinder remains an issue, Plaintiff requests further guidance so that it can specifically address the Court's concerns.

[2] Plaintiff's lead counsel will be attending out-of-state trademark and anti-counterfeiting conferences May 14, 2025, through May 21, 2025.

1

# ARGUMENT

## I. JOINDER

### A. Joinder Is Necessary to Allow Brand Owners to Combat Unique Problem of Online Counterfeiting

Joinder is within the Court's discretion, and Plaintiff respectfully requests that the Court use its discretion to afford brand owners like Plaintiff, with legitimate and valuable intellectual property, a reasonable opportunity to combat online counterfeiters and make their infringement unprofitable. The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Joinder "provides the [Plaintiff] with a meaningful chance at relief while minimizing the burden on the Court's docket." *Merch Traffic, LLC v. The Partnerships, et al.*, No. 25-cv-01180 (N.D. Ill. Apr. 17, 2025) (ECF No. 36) (unpublished) (Kendall, J.). "At this stage, joinder of Defendants promotes judicial economy while protecting the interests of the parties for a just, speedy, and inexpensive outcome." Order at 3, *Zou v. The Entities, et al.*, No. 23-cv-16600 (N.D. Ill. Mar. 8, 2024) (ECF No. 60) (unpublished) (Kendall, J.); *see also Bose Corp. v. P'ships, et al.*, 334 F.R.D. 511, 517 (N.D. Ill. 2020)

At the same time, "[trademark] law imposes on trademark owners the duty to be pro-active and to police the relevant market for infringers." 1 McCarthy on Trademarks and Unfair Competition § 11:91 (5th ed.). The Seventh Circuit has also long recognized that "the sale of counterfeit merchandise has become endemic—perhaps pandemic" and that even when brand owners finally manage to stop one seller, that a new seller will "spring up, and would continue infringing until enjoined." *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 588 (7th Cir. 1989). Above all, "[t]he trial court's primary function is to make violations of the Lanham Act unprofitable to

the infringing party." *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 744 (7th Cir. 1985).

Brand owners are forced to seek *ex parte* TROs because they are one of the few effective mechanisms for effectively combatting offshore Internet counterfeiters, and the only feasible way to enjoin numerous infringers at once. Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' systemic counterfeit activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not. Rule 20 permits courts to join multiple different "logically related" defendants in a single lawsuit without any additional narrowing limitations. "Without an objective basis to identify 'transactions or occurrences,' the proper analysis [under Rule 20] is an investigation of the fairest and most efficient way for a plaintiff to seek relief for the harm they have alleged." *Bose Corp.*, 334 F.R.D. at 513. Rule 20 does not require that any Defendants be "acting in concert" or part of a conspiracy. Defendants' operations depend on high-level market and supply chain coordination and cooperation. Order at 2, *Neman Brothers & Associates, Inc. v. The P'ships, et al.*, No. 24-cv-05666 (N.D. Ill. Jan. 23, 2024) (ECF No. 112) (unpublished) (Tharp, J.).

When Congress has limited joinder of defendants under Rule 20, it has expressly enacted requirements for where those limitations apply. For example, in 2012, the Leahy-Smith America

3

Invents Act,[3] among other things, limited joinder of defendants in patent infringement cases to those "offering for sale, or selling of the same accused product or process." *See* 35 U.S.C. § 299(a)(1). If Congress had intended to prohibit brand owners from bringing trademark infringement actions against logically connected groups of defendants, it would have done so. *See Romag Fasteners, Inc. v. Fossil Grp., Inc*., 140 S. Ct. 1492, 1495 (2020) ("Nor does this Court usually read into statutes words that aren't there.").

### B. Not Permitting Joinder in "Schedule A" Cases Has Only Increased Filings

The fact that brand owners regularly seek and obtain *ex parte* TROs in this District reflects only the enormous problem of online counterfeiting. Plaintiff is aware that there are concerns about the volume of "Schedule A" cases filed in this District.[4] Courts in this District have reacted to these concerns by imposing limitations on Rule 20. Specifically, Courts have required plaintiffs to establish that multiple e-commerce store seller aliases are operated by the **same** individual or entity, *i.e.*, a single defendant operating multiple e-commerce stores. Practically, this usually means that only a single e-commerce store seller alias is allowed in a single action.[5] Putting these types of limitations on or barring brand owners' ability to seek relief will not stop online counterfeiting or "'Schedule A' infringement cases, [which] are federal civil lawsuits and are as important as any other case." *Bigfoot 4x4, Inc. v. The Individuals, et al*., No. 24-cv-02499 (N.D.

---

[3] The Leahy-Smith America Invents Act also adds limitations on venue for bringing a patent infringement action.

[4] Plaintiff's counsel is filing similar cases for brand owners in other Districts.

[5] Defendants operate anonymously through e-commerce seller aliases and take steps to conceal their identities. It is impossible for Plaintiff to conduct a meaningful inquiry into the relationships between Defendants and show the linkage that courts typically require. Even when it is shown, many courts write it off as copying or coincidental, and not evidence of common ownership.

Ill. Dec. 17, 2024) (ECF No. 109) (unpublished) (Fuentes, J.). Instead, it will only encourage infringement because Defendants will rely on having an easy escape hatch to avoid liability.

Importantly, these judicially imposed limitations also *exponentially* increase the number of "Schedule A" cases in this District due to repeat filings for the same groups of defendants. For example, in 2023, Plaintiff's counsel filed 373 cases in this District against a total number of 40,174 e-commerce stores. The average number of defendants per lawsuit was 107. Based on the current filing pace, Plaintiff's counsel will file 936 cases in 2025 against a total number of 39,234 defendants. The estimated average number of defendants per lawsuit is 41. There are about the same total number of defendants in 2023 and 2025 (extrapolated), but a 250% increase in the number of cases. The increase in the number of cases has also resulted in thousands of additional hearings.

Finally, Defendants do not face any prejudice or delay from being joined at this stage. *Zou*, No. 23cv16600 (ECF No. 60), at 2 ("In addition to the two requirements of Rule 20(a)(2), the Court also considers whether joinder would prejudice any party or result in needless delay."); *Neman Bros. & Assocs. v. P'ships, et al.*, 2024 U.S. Dist. LEXIS 223383 (N.D. Ill. Dec. 10, 2024) ("[defendant] also does not point to any prejudice or expense it will incur if joinder is permitted, nor does the Court see any."); *Neman Brothers & Associates, Inc.*, No. 24-cv-05666 (ECF No. 112) ("The Court also cannot see any prejudice or expense the defendants will incur if joinder is permitted, particularly in the nascent stages of this action."). Accordingly, "[d]iscretionary joinder [is] the best path forward." *Merch Traffic, LLC*, No. 25-cv-01180 (ECF No. 36).

## II. *WHAM-O HOLDING V. THE PARTNERSHIPS* OPINION

The Court indicated that "[n]o motion for an ex parte temporary restraining order should be filed in this matter without counsel first consulting the opinion issued in Wham-O Holding v.

5

The Partnerships, 24 CV 12523, Dkt. 39 (N.D. Ill. Feb. 20, 2025) (Alexakis, J.)." [13]. The *Wham-O* opinion cited primarily concerned "what legal authority allows the Court to restrain assets that it knows from the outside – based on evidence Wham-O itself has put in the record – will encompass more than proceeds from those sales?" *Wham-O* at 3. The Court in *Wham-O* suggested that "Wham-O tailor its requested form of relief and seek restraint of only those assets that could be traced to the sale of infringing products. Ultimately, however, counsel for Wham-O did not submit a modified order seeking a more limited temporary asset restraint." *Id.* In other words, the plaintiff in *Wham-O* requested injunctive relief knowing with certainty it was overly broad based on the specific facts of that case. As such, *Wham-O* should not be viewed as a case with broad and general applicability.

    A.    **An Asset Restraint Is Necessary and Appropriate**

Plaintiff is seeking an accounting of profits, in addition to injunctive relief and monetary judgment under the Lanham Act. [1] at 18-20; *see also* 15 U.S.C. §§ 1116, 1117(a); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) (upholding asset restraint to preserve accounting and profits remedy for cable piracy violations even when plaintiff was seeking multiple remedies, including statutory damages). An *ex parte* temporary restraining order ("TRO") with a pre-judgment asset restraint is an appropriate and necessary mechanism for combatting the unique problem of offshore Internet-based counterfeiters. In this case and others like it, China, Hong Kong, and Vietnam-based e-commerce sellers are attempting to piggy-back off of Plaintiff's goodwill and to deceive consumers into purchasing unauthorized goods over the Internet in violation of federal trademark and copyright laws. A pre-judgment asset restraint is necessary to preserve Plaintiff's right to an equitable accounting of Defendants' ill-gotten profits.

6

"[T]he common law action of 'account' is one of the earliest examples of a restitutionary action in equity, **imposing on a defendant the obligation to disclose and return profits** from the use of the plaintiff's property." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 131 (2d Cir. 2014) (emphasis added). To preserve Plaintiff's ability to pursue this remedy, the overwhelming majority of "courts have generally concluded that an asset freeze is appropriate to ensure that permanent equitable relief will be possible." *Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2005 U.S. Dist. LEXIS 28917, at *56 (N.D. Ill. Nov. 8, 2005) (citations omitted). *See also Johnson & Johnson v. Advanced Inventory Mgmt.*, 2020 U.S. Dist. LEXIS 248831, at *8 (N.D. Ill. July 20, 2020). Similarly, the U.S. Copyright Act provides that a plaintiff "is entitled to recover actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement . . . ." 17 U.S.C. § 504(b).

When fashioning injunctive relief, the scope must be broad enough to be effective. *See H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 843 (7th Cir. 2012). Broad injunctive relief is particularly appropriate where "a proclivity for unlawful conduct has been shown." *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 307 (7th Cir. 2010) (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949)). In such cases, injunctions that reach even certain lawful conduct may be necessary when enjoining only unlawful conduct would not effectively protect a plaintiff's rights. *See id.* This is also true where there is a high likelihood that a defendant will dissipate its ill-gotten gains before the Court can issue a final ruling. *See Cont'l Fruit Co. v. Thomas J. Gatziolis & Co.*, 774 F. Supp. 449, 453 (N.D. Ill. 1991); *see also S.E.C. v. Lauer*, 52 F.3d 667, 671 (7th Cir. 1995) ("The preliminary injunction that the district judge issued in this case was and is essential to prevent the dissipation of assets[.]").

It is not Plaintiff's burden to provide evidence of Defendants' profits. As the majority of Courts in this District have held, a defendant may, at any time during the asset restraint, exempt assts from a freeze by "present[ing] documentary proof that particular assets [are] not the proceeds of counterfeiting activities." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) (quoting *Luxottica USA LLC v. The Partnerships, et al.* 2015 U.S. Dist. LEXIS 78961, (N.D. Ill. June 18, 2015)); *Delta Tech. Dev. LLC v. BIGJOYS*, 2024 WL 3755929 (N.D. Ill. Aug. 12, 2024). Until then, a total asset restraint is necessary to preserve the *status quo* and afford Plaintiff with a meaningful opportunity to pursue an accounting of profits. *See Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 2013 U.S. Dist. LEXIS 205985, at *6-7 (N.D. Ill. Oct. 30, 2013).

**B.     Expedited Discovery from Third Parties Does Not Provide a Means For Determining All Infringing Sales**

*Wham-O* stated that "[s]ome calculation of profits should be feasible from" the Court's previously ordered expedited discovery. *Wham-O* at 6. First, it is standard practice for online marketplace platforms to notify account holders when responding to subpoenas or discovery orders. Defendants will be alerted about the case at the same moment Plaintiff obtains discovery to calculate profits and before any asset restraint is in place, frustrating any subsequent injunctions. Additionally, *Wham-O* makes incorrect factual assumptions and inappropriately shifts Defendants' burden onto non-parties. Generally, the limited expedited discovery received from third parties only includes the sales information of a specific product provided by Plaintiff's counsel to the third-party, which corresponds to a unique product identification number. Declaration of Justin R. Gaudio ("Gaudio Decl.") at ¶ 2. It does not include Defendants' entire sales history, a breakdown of the funds in a platform account, and sales information for other product variations (e.g., a different color or size). *Id.* Moreover, the amount and quality of expedited discovery

8

received varies by the responding third party. *Id.*[6] It also incentivizes Defendants to benefit from their own wrongdoing by ignoring the proceedings. *See Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 261 (1916) ("There, 'on established principles of equity, and on the plainest principles of justice, the guilty trustee cannot take advantage of his own wrong.'"); *see also Sapoundjiev v. Ashcroft*, 376 F.3d 727, 728 (7th Cir. 2004) ("Litigation entails reciprocal obligations[.]").

Both the parties and the Court should be wary of imposing overly burdensome discovery obligations on non-parties. *See Guy Chem. Co. v. Romaco AG*, 243 F.R.D. 310, 313 (N.D. Ind. 2007); *see also Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D. Ill. 2013). *Wham-O*'s invitation to seek judicial relief if a third party "stonewall[s]" runs afoul to this. *Wham-O* at 6. In Plaintiff's counsel's experience, third parties are willing to produce limited sales information associated with a specific product identification number, account balance, and available contact information without significant objections.[7] Gaudio Decl. at ¶ 3. The third-parties will likely object to producing all of Defendants' sales records, product images, and accounting of Defendant's account balance. For example, in another case, Plaintiff's counsel served Amazon with a Court-ordered subpoena requesting the entirely of a single defendant's sales records. *Id.* at ¶ 5. However, Amazon objected on the basis that it was overly burdensome and the records are readily available to defendant. *Id.*

As a result, the Court would need to start each case by resolving discovery disputes between Plaintiff and non-parties. The third parties already typically take the entire duration of a TRO to

---

[6] In effect, this also requires that Plaintiff monitor a Defendant's storefront from its inspection, for months, to try to establish a historical record of how many different Unauthorized Products Defendants sold. This would also inevitably mean that Plaintiff would permit Defendants to sell Unauthorized Products for months before proceeding with enforcement.

[7] Plaintiff does request more information than this. *See* Gaudio Decl. at ¶ 3.

provide information about sales of a single product. Requiring production of more information would only delay the case from proceeding forward.

      **C.     At this Stage, the Scope of the Asset Restraint Should be All Funds Linked to Defendants' E-commerce Stores**

In granting similar prejudgment relief, courts have considered factors specific to the unique problem of offshore Internet-based counterfeiters, including: (1) the inherently deceptive nature of counterfeiting, (2) that defendants are located offshore with no U.S. presence and take actions to conceal their identities, and (3) actions taken by similarly situated defendants in previous cases to avoid consequences. Under these facts, courts find that it is reasonable to presume defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court when given notice unless those assets are restrained. Given the deceitful and secretive nature of counterfeiting, Circuit Courts have found that dissipation of assets is likely and upheld asset restraints in such cases. *See Gucci Am.*, 768 F.3d at 132-33; *see also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 Fed.Appx. 707, 709 (5th Cir.2007); *Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.,* 737 F. Supp. 1521, 1527 (S.D. Cal. 1990), *aff'd*, 970 F.2d at 561 (9th Cir. 1992); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,* 51 F.3d 982, 987-88 (11th Cir. 1995); *In re Vuitton Et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979).

Plaintiff maintains that, at this stage, an asset restraint on all funds linked to Defendants' e-commerce stores is necessary and appropriate because the specific amounts of Defendants' profits derived from the sale of Unauthorized Products are currently unknown. *See Deckers Outdoor Corp.*, 2013 U.S. Dist. LEXIS 205985, at *7. At the outset of this case, Plaintiff does not know the extent of Defendants' counterfeiting activities—the purpose of the prejudgment asset restraint is to preserve the *status quo* and give Plaintiff the opportunity to obtain full and complete relief at the end of the case.

The *Wham-O* opinion, without citing any legal support, requires a party to specifically identify Defendants' profits to determine the appropriate scope of a *prejudgment* asset restraint. *Wham-O* at 4 ("It is a form of relief that requires a degree of specificity from the plaintiff. He must identify the particular property or proceeds he seeks to recover."). As explained above, it is not possible to determine the amount of infringing sales without Defendants' participation. This also conflates the showing required for a final remedy of an accounting of profits, with that of a prejudgment asset restraint that is meant to preserve Plaintiff's ability to pursue an accounting of profits. Finally, the *Wham-O* opinion's approach also assumes that the funds in Defendants' marketplace financial accounts represent something more than a snapshot of funds temporarily held by the third-parties until Defendants transfer the funds to their bank accounts.[8] For example, on Amazon, the standard "disbursement" occurs automatically every two weeks, so the funds restrained are not representative of Defendants' total sales activities.

However, if the Court is unwilling to grant a total asset restraint, Plaintiff requests that it grant an asset restraint limited to proceeds attributable to Defendants' infringing conduct as determined by the platform. *See, e.g.,* Order at 6, *Converse Inc. v. The P'ships, et al.*. No. 25-cv-01048 (N.D. Ill. Feb. 4, 2025) (ECF No. 21) (unpublished) (Shah, J.).

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court exercise its discretion and permit joinder of Defendants. Plaintiff also respectfully requests the Court exercise its discretion and enter a total asset restraint while the scope of Defendants' Unauthorized Products

---

[8] The *Wham-O* opinion also assumes that the funds restrained will necessarily be more than the sales of infringing products, that a significant portion of defendants' products are non-infringing, and that the products currently offered in a store are fixed or representative of all products it has ever sold. These assumptions are not based on facts.

11

sales is unknown, or (alternatively) enter an asset restraint limited to proceeds attributable to Defendants' infringing conduct.

Dated this 15th day of May 2025.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jennifer V. Nacht
Madeline B. Halgren
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jnacht@gbc.law
mhalgren@gbc.law

*Counsel for Plaintiff Hallmark Licensing, LLC*