UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Hallmark Licensing LLC., <br><br> *Plaintiff*, <br><br> v. <br><br> The Partnerships and Unincorporated Associations Identified On Schedule A, <br><br> *Defendants* | No. 25 CV 4970 <br><br> Judge Lindsay C. Jenkins |

### ORDER

Hallmark Licensing filed its complaint in the case against many e-commerce storefronts for copyright infringement regarding its product "My Friend Jesus", a stuffed plush Jesus doll. This Order resolves Defendant Hongkong Yueqi Tech Ltd. d/b/a Homelex's motion opposing a preliminary injunction. The motion is denied.[1]

Temporary restraining orders and preliminary injunctions are extraordinary and drastic remedies that "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). The party seeking such relief must show: (1) it has some likelihood of success on the merits; (2) there is no adequate remedy at law; and (3) it will suffer irreparable harm if the court denies relief. *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). "The two most important considerations are likelihood of success on the merits and irreparable harm." *Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023).

If the moving party meets this threshold showing, the court "must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction." *Id.* (citation omitted) (internal quotation marks omitted). "Specifically, the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir. 1992)), abrogated on other grounds by *Nken v. Holder*, 556 U.S. 418, 434 (2009).

---

[1] Homelex did not provide Hallmark with advance notice of its intent to rely on experts and expert declarations, so the court declines to consider the information described by Dr. Candy Gunther Brown and Professor Lynn Rosenblum. [Dkt. 54-3 and 54-4.] Failure to disclose these materials in advance of its filing prejudices Hallmark, so the court disregards their opinions at this stage.

1

The Seventh Circuit has described this balancing test as a "sliding scale": "if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors*, 922 F.3d at 364. Finally, the court considers whether the injunction is in the public interest, which includes considering any effects on non-parties. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

To meet the likelihood of success requirement, the plaintiff must present a "strong" showing, which "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020). To establish copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

"A certificate of registration from the U.S. Register of Copyrights constitutes *prima facie* evidence of the validity of a copyright." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 507 (7th Cir. 1994) (citing 17 U.S.C. § 410(c)). This presumption of validity applies only to those certificates "made before or within five years after first publication of the work," with "[t]he evidentiary weight to be accorded the certificate of a registration made thereafter ... within the discretion of the court." 17 U.S.C. § 410(c). Here, Hallmark registered copyright protection over its "Plush Shepherd Toy 1.0" in 2023. [Dkt. 19, ¶ 17; See 17 U.S.C. § 410(c).] Though five years has not elapsed, there is no question at this stage that Hallmark registered a valid copyright.

Regarding the second element, where there is no direct evidence of copying, a court may infer copying from allegations that a defendant had an opportunity to copy the original, referred to as "access," and that the works in question are "substantially similar" to each other, or, in other words, "that the two works share enough unique features to give rise to a breach of the duty not to copy another's work." *Peters v. West*, 692 F.3d 629, 633–34 (7th Cir. 2012). Courts determine whether two works are substantially similar by applying the "ordinary observer" test: "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Wildlife Exp.*, 18 F.3d at 509. That is, courts look to whether the ordinary observer would tend to overlook the disparities, unless setting out to detect them, and to regard the aesthetic appeal of the two works as the same. *Id.*

Hallmark argues indirect proof of copying because its "My Friend Jesus" doll has been available on its website, hallmark.com, since 2017. [Dkt. 19, ¶ 4; Dkt. 84 at 4-5.] Even accepting Homelex's assertion that it independently created its doll and

did not have access to Plaintiff's product,[2] Hallmark has shown substantial similarity: an ordinary, reasonable person viewing the dolls would conclude that Homelex unlawfully appropriated Hallmark's work. Viewing the works side by side, *see* dkt. 84 at 6; dkt. 54 at 10, the dolls have nearly identical facial features—pupil-less, circular eyes; small, slightly arched eyebrows; a line-drawn nose that leans to the right side; a full beard that extends to the chest with a goatee; and a small, line-drawn smile. They also have substantially similar hairstyles parted down the middle with a widow's peak. Both have fingerless hands, and both wear white garb with a light blue sash that extends from the top left shoulder down to the legs. Both are wearing the same two strap Jesus sandals. In short, Hallmark has made out a *prima facie* case of copyright infringement.

Homelex argues that Hallmark cannot show a likelihood of succeeding on the merits because its copyright is exceptionally "thin, protecting, at most, its specific, minimal artistic choices, not the underlying public domain elements that constitute the visual identity of Jesus." [Dkt. 54 at 2.] Courts may find that a copyright is entitled to only "thin" copyright protection. See *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) (recognizing that the thin copyright in a factual compilation means that, "notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement"). For example, the depiction of an animal requires "a copyright holder [to] prove substantial similarity to those few aspects of the work that are expression not required by the idea." *Wildlife Exp. Corp.*, 18 F.3d at 508. As a "work embodies more in the way of particularized expression, it moves away from" the necessary elements "and receives broader copyright protection." *Id.* "At the other end of the spectrum, creative complex artistic expressions are more fully protected." *Id.*

The court agrees with Hallmark that it is not "the idea of Jesus" that is protected by Hallmark's copyright, but rather "a particular embodiment of that concept." [Dkt. 84 at 8.] This makes sense given that Homelex itself argues that its 2024 copyright registration for a plush Jesus doll is protectable, while Hallmark's is not. Indeed, Homelex could have made a plush doll with different facial markings or skin tone, different colored and styled clothing and shoes, different hair, etc. Instead, what Homelex allegedly copied was Hallmark's protected expression.

Next, the court considers the irreparable harm to Hallmark, which must be harm that is "not fully compensable or avoidable by the issuance of a final judgment ... in the plaintiff's favor." *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 740 (7th Cir. 2013). Harm is irreparable if legal remedies are inadequate to cure it, meaning "the remedy must be seriously deficient as compared to the harm suffered." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531,

---

[2] Homelex's declaration is problematic in that it does not provide any statements as to when Sophia Chen conceived of her design, *i.e.*, prior to 2017, nor does it point to any sketches or prototypes. [Dkt. 54-5.]

545 (7th Cir. 2021) (citation omitted). "The more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Kraft Foods Grp.*, 735 F.3d at 740 (quoting *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)).

The court has found there is a likelihood that Hallmark will succeed on the merits. Further tipping the scales in support of irreparable harm, it argues that infringing sales will harm its goodwill and reputation. [Dkt. 85 at 17-18.] Lost sales alone is not typically enough to render harm irreparable, see *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 300 (Fed. Cir. 2009), but the other harms are colorable irreparable harms. *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("'Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm'") (quoting *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012))); *Life Spine, Inc.*, 8 F.4th at 546 (citing 11A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2948.1 (3d ed. 2002 & April 2021 Supp. ("Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable.")) Hallmark will suffer irreparable harm absent a preliminary injunction.

Because Hallmark has established the first two factors, the court must "engage in a balancing analysis, to determine whether the balance of harm favors the moving party or whether the harm to other parties or the public sufficiently outweighs the movant's interests." *Gao v. P'ships & Unincorporated Associations Identified on Schedule A,* 2022 WL 1028926, at *3 (N.D. Ill. Apr. 4, 2022) (quoting *Whitaker v. Kenosha Unified Sch. Dis. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017)). Homelex argues that the balance of hardships weighs in its favor because the harm would be "catastrophic" "the complete shutdown of a key product line, a devastating loss of revenue, and irreparable damage to its business relationships" as a small business. [Dkt. 54 at 15.] It also argues that any harm can be adequately compensated by posting a bond.

The court does not agree. While the court acknowledges the preliminary injunction's adverse business effects on Homelex, continued sales of products involving Hallmark's copyright inflicts irreparable harm on Hallmark's future business integrity and revenues. And a balancing of the parties' respective hardships reveals that the injunction means only that the court enjoins Homelex from conducting business that allegedly violates federal copyright law. See *CSC Holdings, Inc. v. Greenleaf Elecs., Inc.*, 2000 WL 715601, at *7 (N.D. Ill. June 2, 2000) (holding that the balance of hardships leans strongly towards the plaintiff's request for a preliminary injunction because the defendant's argued hardships stem from "conducting a business that is prohibited by federal law" and "[s]uch illegal activities are not worthy of any protection").

4

Finally, the balance of equities "involves considering the public interest and effects of the preliminary injunction on 'people and institutions that are not parties to the case." *Madden v. Amazon Servs., LLC*, 2023 WL 8827977, at *10 (N.D. Ill. Dec. 21, 2023) (quoting *Cassel v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021)). As discussed, the public "has a strong interest in 'preserving the integrity of the copyright laws which seek to encourage individual effort and creativity by granting valuable enforceable rights.'" *Balsamo/Olson Grp., Inc. v. Bradley Place Ltd. P'ship*, 966 F. Supp. 757, 764 (C.D. Ill. 1996) (cleaned up). In sum, the balance of factors tilts in favor of granting a preliminary injunction.

\* \* \* \* \*

Because the court declines to dissolve the preliminary injunction, it would ordinarily consider whether to reduce the freeze. "To exempt assets from an asset freeze, the burden is on the party seeking relief to present documentary proof that particular assets are not the proceeds of counterfeiting activities." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015). Homelex does not expressly request that the court modify the roughly $7,500 asset restraint. Hallmark argues that keeping the restraint is appropriate given that Homelex has not pointed to any other evidence of assets in the United States. [Dkt. 85 at 18.] Because Homelex has not presented any documentary evidence to the contrary, such as an accounting of the restrained funds, the court declines to disturb the prior ruling.

Enter: 25-cv-4970
Date: July 23, 2025

_____
Lindsay C. Jenkins