UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Hallmark Licensing, LLC<br><br>*Plaintiff*,<br><br>v.<br><br>The Partnerships and Unincorporated Associations Identified On Schedule A,<br><br>*Defendant*. | **CASE NO.** 25-cv-4970 |

**DEFENDANT HONGKONG YUEQI TECH LTD.'S MOTION TO STAY
PRELIMINARY INJUNCTION PENDING APPEAL**

1

Pursuant to Fed. R. Civ. P. 62(d) and Fed. R. App. P. 8(a), or, in the alternative, for modified relief to preserve appellate review, Defendant Hongkong Yueqi Tech Ltd. d/b/a Homelex ("Defendant") respectfully moves to stay enforcement of the preliminary injunction entered on July 23, 2025 (Dkt. 91) pending appeal to the United States Court of Appeals for the Seventh Circuit. In support of this motion, Defendant states as follows[1]:

**I. INTRODUCTION**

On July 23, 2025, this Court entered a preliminary injunction against Defendant based on claims of copyright infringement related to Defendant's sale of a figurine product. Defendant timely filed a Notice of Appeal (Dkt. 92) and now seeks to stay enforcement of that injunction so it is not executed while the appeal is pending. Consistent with Federal Rule of Appellate Procedure 8(a)(1), Defendant moves first in this Court for a stay pending appeal. A stay is warranted because (i) the injunction imposes ongoing and irreparable commercial harm on Defendant, (ii) the appeal presents substantial legal questions on procedure and merits, and (iii) Plaintiff and the public will suffer no meaningful prejudice from a short, secured stay.

**II. PROCEDURAL BACKGROUND**

On May 21, 2025, the Court granted Hallmark's *ex parte* TRO. Hallmark moved for a preliminary injunction on June 5, 2025. Homelex filed its opposition on June 26, 2025. On July 7, 2025, the Court largely denied Hallmark's request for 45 days of discovery plus a 30-day reply extension (seeking a September 16 deadline), set July 11 as the reply date, and Hallmark filed its reply on July 11.

On July 23, 2025, the Court denied Homelex's request to dissolve or avoid a preliminary injunction, concluded that Homelex's late-disclosed expert submissions would not be considered

---

[1] Consistent with FRAP 8(a)(1), Defendant first seeks relief in this Court; on denial or failure to obtain timely relief, Defendant will promptly renew in the Seventh Circuit.

because the failure to provide advance notice prejudiced Hallmark, and found substantial similarity under the ordinary-observer test (eyes without pupils; slightly arched brows; line-drawn nose; beard and goatee with a small smile; hair parted down the middle with a widow's peak; fingerless hands; white garment with a light-blue sash from the left shoulder; and two-strap sandals).

As to the asset restraint, the Court noted the case presently involves roughly $7,500 and that Hallmark did not identify other U.S. assets; absent contrary documentary proof, the Court declined to disturb the restraint. Hallmark's reply likewise identified a balance of $7,406.55.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 62(d) authorizes the Court, while an appeal is pending, to "suspend, modify, restore, or grant an injunction" on terms— including a bond or other security— that protect the opposing party's rights. Fed. R. Civ. P. 62(d). Because an appeal does not automatically stay an injunction, see Fed. R. Civ. P. 62(c), a party seeking interim relief must proceed under Rule 62(d) and FRAP 8. The Supreme Court has established that courts considering a stay pending appeal must weigh four familiar factors: likelihood of success on the merits, irreparable harm to the movant, harm to others, and the public interest—with the first two deemed the "most critical". *Nken v. Holder*, 556 U.S. 418, 434 (2009). The Seventh Circuit applies a sliding scale: if the merits showing "has some, though not necessarily great, merit," the movant must demonstrate that the balance of harms strongly favors a stay. *Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 546–47 (7th Cir. 2007); *Mays v. Dart*, 974 F.3d 810, 821–22 (7th Cir. 2020); *Venckiene v. United States*, 929 F.3d 843, 854–55 (7th Cir. 2019); *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020).

### IV. STANDARD OF REVIEW ON APPEAL

A district court's decision to grant or deny a preliminary injunction is reviewed for abuse of discretion. Legal conclusions are reviewed de novo, factual findings for clear error, and the ultimate balancing of the equitable factors for abuse of discretion. A court abuses its discretion by committing

an error of law, relying on a clearly erroneous assessment of the evidence, or failing to conduct the required analysis. *Girl Scouts of Manitou v. Girl Scouts of the U.S.A.*, 549 F.3d 1079, 1086 (7th Cir. 2008); *Books v. City of Elkhart*, 239 F.3d 826, 829 (7th Cir. 2001); *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017).

Although Rule 37(c)(1) uses "automatic" exclusion language, the Seventh Circuit requires a case-specific inquiry into whether the failure was "substantially justified or harmless," guided by the four *David* factors: (1) prejudice or surprise; (2) ability to cure; (3) likelihood of disruption; and (4) bad faith or willfulness. Failure to apply the correct legal framework or to make the necessary findings constitutes an abuse of discretion. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003); *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 417–19 (7th Cir. 2019).

In the context of preliminary injunctions, the Seventh Circuit holds that **an evidentiary hearing is required where the nonmovant's response raises genuine disputes of material fact** that could affect the court's decision. See *Ty*, 132 F.3d at 1171. The Seventh Circuit recently reiterated this principle, affirming the denial of a hearing because the opponent identified no material factual disputes—while emphasizing that a hearing is required when disputed facts might affect the ruling. *D.P. v. Mukwonago Area Sch. Dist.*, No. 23-2568, 140 F.4th 826 (7th Cir. 2025), vacated for supplemental briefing on other issues (7th Cir. June 30, 2025).

At the preliminary-injunction stage, courts employ less-formal procedures and may rely on materials that would be inadmissible at trial, including affidavits and even hearsay. *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997). District courts in this Circuit apply the same approach and, where factual disputes could affect the outcome, hold focused evidentiary hearings—here, an eight-day hearing with competing experts. *City of Evanston v. N. Ill. Gas Co.*, 381 F. Supp. 3d 941, 948–49 (N.D. Ill. 2019).

## V. ARGUMENT

3

**A. Schedule A and Rule 65(b)(3) Confirm an Expedited, Curative Process—Not Categorical Exclusion**

No ambush under the governing framework. Rule 65(b)(3) requires that when a TRO issues without notice, the court must set the preliminary-injunction hearing "at the earliest possible time," and Rule 65(b)(4) allows the restrained party to seek dissolution or modification on two days' notice. That design prioritizes speed and promptly joined issue—not prolonged, discovery-heavy motion practice. **Schedule-A** practice in this District likewise pairs an *ex parte* TRO (often with electronic service) with a rapid transition to a noticed PI hearing. See Fed. R. Civ. P. 65(b)(3), (b)(4).

The record shows notice, time to respond, and an actual response. Homelex filed its opposition with sworn expert declarations on June 26, 2025 (Dkt. 54). Although the initial schedule contemplated a July 3 reply, the Court on July 7 extended Hallmark's deadline to July 11 and declined Hallmark's request for 45 days of discovery plus 30 additional days, finding that request disproportionate in this posture. Dkt. 70; Minute Entry July 7, 2025 (Dkt. 73). Hallmark then filed a detailed reply on July 11 with the Nacht declaration, addressing the defense submissions on the merits. Dkts. 84, 85. On these facts, there was no "trial by ambush," and any conceivable prejudice was readily curable—and in fact cured by the short extension and Hallmark's substantive reply.

The proportional remedy, if any, was a narrow cure—not categorical exclusion. At the PI stage, evidentiary rules are relaxed; courts may consider affidavits and even hearsay, and tailor cures (sur-reply, limited exchanges, or a short evidentiary hearing) rather than strike entire categories of proof. *Ty,* 132 F.3d at 1171. An evidentiary hearing is required only where the nonmovant raises genuine factual disputes that could affect the result; otherwise the court may rule on declarations. Here, if the Court believed any dispute might affect the outcome, the proper course

4

was a brief, targeted hearing—not categorical exclusion. If—and only if—the Court concludes that Plaintiff's submissions create outcome-determinative factual disputes, Defendant is amenable to a brief, tightly cabined evidentiary hearing with time-limited cross-examination of Dr. Brown, Prof. Rosenblum, and Ms. Sophia Chen.[2]

Rule 37(c)(1) required the *David* analysis. The Order's footnote excludes the defense experts for lack of "advance notice," but Rule 37(c)(1) is not self-executing. The Court was required to assess whether any lapse was substantially justified or harmless under the four *David* factors (prejudice/surprise; ability to cure; disruption; bad faith); *Uncommon,* 926 F.3d at 417–19. Because Hallmark had notice, received an extension, and filed a substantive reply with its own declaration, the *David* factors weigh against exclusion and, at minimum, present a serious appellate question supporting a stay pending appeal. See Dkt. 91 at 1 n.1 (declining to consider defense experts), Dkts. 54, 84, 85; Dkt. 73. Even if the Court adheres to its footnote declining to consider Dr. Brown and Professor Rosenblum "at this stage," the remedy cannot be categorical exclusion of the facts they cite. At the preliminary-injunction stage, evidentiary rules are relaxed; courts may consider affidavits, declarations, documents, and even hearsay, and they routinely tailor narrow cures rather than strike entire categories of proof. *Ty*, 132 F.3d at 1171. Accordingly, in re-performing the required *David* harmlessness analysis, the Court should at least admit and consider the attached historical images and publications as non-expert exhibits. Otherwise, the critical predicate question—whether the asserted similarities are *scènes à faire* or public-domain

---

[2] Defendant previously proposed addressing any perceived prejudice through rebuttal submissions and cross-examination of Defendant's declarants rather than broad discovery. See Dkt. 72 at 7–9 (identifying vigorous cross-examination as the proper means to test "shaky but admissible evidence") and 8–9 (Plaintiff may cross-examine Defendant's experts and Ms. Chen). Defendant now proposes the same limited cross-examination as an alternative remedy on this motion if the Court finds material factual disputes.

conventions—would be artificially excluded from the record, skewing both filtration and any "likelihood" assessment. *Id.*

### B. Legal Errors Justify a Stay

This appeal presents substantial, outcome-determinative questions of law and procedure. Two errors are central: the Court excluded defense experts without the required *David* analysis, and it resolved material factual disputes without a targeted evidentiary hearing.

The Seventh Circuit has made clear that Rule 37(c)(1) is not self-executing: exclusion is appropriate only if the failure to disclose was neither "substantially justified" nor "harmless," and courts must consider four factors. *David*, 324 F.3d at 857. Where the court fails to apply the correct legal framework or omits case-specific findings under *David*, it abuses its discretion. *Uncommon,* 926 F.3d at 417–19.

Applied here. The *David* factors confirm that exclusion was unwarranted and, at a minimum, presents a substantial appellate question. (1) Prejudice/Surprise. Defendant served sworn expert declarations on June 26, 2025, with its opposition (Dkt. 54); on July 11, 2025, Plaintiff filed a detailed reply and the Nacht declaration (Dkts. 84, 85) directly engaging those opinions. That record refutes any "sandbag" claim. (2) Ability to Cure. Any residual prejudice was readily curable by narrow measures—e.g., an evidentiary hearing. (3) Disruption. The Court had entered no scheduling order and no expert deadlines; targeted cures would not have disrupted any trial. (4) Bad Faith. There is no finding and no evidence of willfulness; Defendant submitted sworn materials promptly in response to the PI motion. These case-specific considerations, especially the absence of a scheduling order and Plaintiff's substantive reply, underscore why categorical exclusion without a *David* analysis is unlikely to withstand review and why a stay pending appeal is warranted. *Uncommon,* 926 F.3d at 417–19.

6

**This is a Schedule A case that began on an *ex parte* footing with expedited relief.** Defendant's first opportunity to present evidence to the Court was its June 26, 2025, opposition (Dkt. 54), which attached sworn expert analyses from Dr. Candy Gunther Brown and Prof. Lynn Rosenblum; service was effected via CM/ECF the same day. Plaintiff thus had prompt notice and, in fact, filed a fulsome reply on July 11, 2025, with the Nacht declaration (Dkts. 84, 85) directly engaging those opinions. That sequence defeats any claim of surprise and confirms that any arguable prejudice was curable through proportionate measures rather than categorical exclusion. See FRCP 65(a)(1) (preliminary injunction may issue only on notice). In this compressed ex parte Schedule A posture, the real prejudice flowed to Defendant; striking its principal expert evidence—without the required David findings—magnified that imbalance and presents a substantial appellate issue.

In the Seventh Circuit, a court must hold an evidentiary hearing when the opponent's response creates genuine fact disputes bearing on the injunction; no hearing is required when the record presents no material factual dispute and the opponent neither requests a hearing nor proffers contrary evidence. *Ty*, 132 F.3d at 1171. Here, Defendant's sworn expert declarations squarely joined issue on originality, filtration of public-domain elements, and similarity—material disputes at the core of Plaintiff's PI showing. Excluding those declarations without the mandated *David* analysis and without affording the fact-finding tool the Seventh Circuit prescribes when material disputes exist constitutes reversible error.

Accordingly, where the record reflects categorical exclusion of critical defense evidence without a *David* factor analysis of prejudice and harmlessness, the likelihood that such an exclusion will not withstand appellate review satisfies the "likelihood of success" (or at minimum "serious questions") prong.

7

**C. Defendant Has a Substantial Case on the Merits (Thin Copyright and Filtration)**

    **1. The Court Failed to Apply Filtration Required by Thin Copyright Doctrine**

The Seventh Circuit requires courts to perform a filtration analysis in copyright cases, separating protectable expression from unprotectable elements such as ideas, scènes à faire, and stock features. This principle was emphasized in *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1101–03 (7th Cir. 2017), and reiterated in *Peters v. West*, 692 F.3d 629, 633–34 (7th Cir. 2012). In such contexts, copyright protection is "thin" and extends only to the author's original expression— not to generic implementations of a familiar motif. Accordingly, infringement requires "extremely close" copying of protectable microelements. *Design Basics, LLC v. Signature Constr., Inc.*, 994 F.3d 879, 884–86 (7th Cir. 2021).

Here, Plaintiff's overlap list—long hair and beard; a white inner robe with a blue sash or drape; simple sandals; and a gentle, child-friendly affect—comprises centuries-old, public-domain tropes for depictions of Jesus. The Order likewise aggregates stock, minimally creative cartoon implementations—pupil-less dot eyes, small arched brows, a line-drawn nose, center-parted hair with a widow's peak, fingerless hands, a white garment with a blue sash from the left shoulder, and two-strap sandals—without first filtering what the law requires to be excluded. The Seventh Circuit cautions that "similarity by itself—even close similarity—should not automatically spark an inference of unlawful copying," and that the ordinary-observer analysis can proceed only after filtration. *Lexington Homes*, 858 F.3d at 1101, 1103; *Peters*, 692 F.3d at 633–34.

    **2. After Filtration, the Parties' Protectable "Micro-Choices" Materially Diverge**

Once stock features are set aside, the remaining protectable selections, coordination, and arrangement differ in multiple aesthetic respects: facial geometry and age cueing (a softer, *kawaii*, child-forward face with visible ears versus a harsher, adult visage with no ears); presence/absence of a neck; garment construction (hemmed versus exposed cut edge); proportions and size (≈9.8 inches,

8

child-handable, versus ≈26 inches, floppy); coverage and treatment of legs and toes; and differing fabric shades and tones. In a crowded field, actionable copying demands extremely close—indeed, nearly verbatim—appropriation of protectable expression, not mere adherence to shared religious tropes. *Signature Constr.*, 994 F.3d at 882 ("the copying must be extremely close"); *id.* at 890 ("only a virtually identical plan infringes"); *Lexington Homes*, 858 F.3d at 1105 ("these plans resemble countless others").

Moreover, even setting expert opinions aside, the historical record independently contradicts Plaintiff's originality narrative. Dr. Brown identifies, and Defendant submits, a 1995 Bible Land children's board-game piece depicting a cute, chubby-cheeked Jesus in a white robe with a blue sash—decades before Hallmark's 2017 doll. Brown Decl. ¶ 3.c.15.



Those features map onto the overlap items the Order aggregates (white garment with a blue sash/drape and a child-forward affect, along with minimally creative cartoon implementations such as dot eyes, small brows, and a line-drawn nose), confirming they are stock conventions that must be filtered before any ordinary-observer comparison. See *Lexington Homes*, 858 F.3d at 1101–03; *Peters*, 692 F.3d at 633–34. On this record, after filtration, only nearly verbatim appropriation of protectable micro-expression could be actionable—which is not present here. *Signature Constr.*, 994 F.3d at 882, 890. To the extent the Court viewed the defense submissions as procedurally late, the proper cure was a narrow measure—an evidentiary hearing—not categorical exclusion. *Ty*, 132 F.3d at 1171. Plaintiff

9

had notice, obtained an extension, and filed a detailed reply with its own expert, underscoring curability and lack of prejudice. Dkts. 54, 73, 84, 85; Dkt. 91.

### 3. Independent Creation Evidence Rebuts Any Inference of Copying

Designer Ms. Chen attested that she independently designed the doll from Scripture and historical sources, expressly identifying the white robe (Transfiguration, Matthew 17:2), blue sash (Numbers 15:38–39), yellow belt (Isaiah 11:5), simple sandals (e.g., Luke 3:16), and a gentle, child-oriented tone, as part of a broader set concept (Jesus, Mary and child, and a donkey). On June 20, 2025, defense counsel provided Plaintiff with the underlying design materials, including (i) a baby-Jesus prototype file timestamped November 29, 2022, (ii) an adult-Jesus + donkey prototype file timestamped December 15, 2022, and (iii)an adult-Jesus prototype file timestamped December 19, 2022. **Ex. A; Dkts. 54, 84, 85. This contemporaneous documentation was provided to Plaintiff on June 20, 2025; Plaintiff's filings did not squarely present these materials to the Court.** This contemporaneous documentation—predating the dispute by more than a year—corroborates independent creation and supplies a complete, non-Hallmark source for any overlap. At the PI stage, courts may rely on affidavits and documents and proceed on less formal procedures. *Ty,* 132 F.3d at 1170–71; *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984).

To the extent Plaintiff questions source attribution or metadata, those arguments go to weight, not admissibility, and can be addressed by deposition or cross examination.

### 4. Plaintiff's Objections Go to Weight, Not Admissibility; the Order's Categorical Exclusion Raises a Separate Rule 37(c)(1) Error

The Court "declined to consider" the *Brown* and *Rosenblum* opinions solely because Homelex did not provide "advance notice," but Rule 37(c)(1) is not self-executing. Exclusion is proper only if the failure was neither "substantially justified" nor "harmless," evaluated under four *David* factors: (1) prejudice or surprise; (2) ability to cure; (3) likelihood of disruption; and (4) bad faith or willfulness.

Here, Plaintiff had notice, obtained an extension, and filed a detailed reply—demonstrating curability and lack of surprise; narrower remedies (e.g. an evidentiary hearing ) were available. *Uncommon,* 926 F.3d at 417–19; *Chi. Joe's,* 94 F.4th at 603; Dkts. 54, 73, 84, 85; Dkt. 91. While a PI hearing is not invariably required, hearing is required when the opponent's response raises genuine factual disputes that could affect the outcome—as here, with competing sworn experts on originality, protectable expression, and methodology.

### 5. These Errors Present a Substantial Appellate Question

Given (i) the iconography-driven, crowded nature of plush depictions of Jesus; (ii) the Order's reliance on stock features without the required filtration; (iii) the material, record-supported divergences in protectable micro-choices; and (iv) sworn, contemporaneously corroborated independent-creation evidence, Defendant presents a substantial appellate case that Plaintiff's copyright is, at most, thin and that proper filtration negates substantial similarity of protectable expression. These merits showings—combined with the Rule 37(c)(1) error and the absence of a targeted evidentiary hearing despite material factual disputes—satisfy the "likelihood of success" or, at minimum, the "serious questions" standard under the sliding scale. *Lexington Homes*, 858 F.3d at 1101–03; *Signature Constr.*, 994 F.3d at 884–86; *Nken*, 556 U.S. at 434; *Cavel,* 500 F.3d at 546–47.

### D. Defendant Will Suffer Irreparable Harm Absent a Stay

The injunction compels Homelex to pull down listings, halt fulfillment, and accept platform-level penalties that are structural and difficult to reverse—including strike accumulations, algorithmic de-ranking, loss of high-visibility placements, and deteriorated seller-health metrics. These consequences depress visibility and conversion across the entire account, not merely the accused SKU, and they do not automatically unwind even if the injunction is later vacated. The Seventh Circuit repeatedly holds that injuries to goodwill, customer relationships, market share,

and reputation are irreparable because they are difficult—indeed "virtually impossible"—to quantify in money damages. See *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545–46 (7th Cir. 2021); *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984); *Ty*, 237 F.3d at 902.

In addition, the breadth of Hallmark's proposed injunction confirms the magnitude of the harm. Hallmark asks the Court to grant its motion "in its entirety" against Homelex and to enjoin not only Homelex but also its "affiliates, officers, agents, servants, employees, attorneys, confederates, and other persons acting in active concert," and to bar "manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner" any product that bears Hallmark's marks or copyrighted works. The proposed order further compels third-party platforms and processors (including PayPal, Alibaba, Amazon, eBay, Temu, and Walmart) to provide expedited discovery within seven (7) days, to "disable and cease displaying any advertisements" associated with Homelex within seven days, to locate all accounts and funds connected to Defendant, and to "restrain and enjoin any such accounts or funds" until further order. It also authorizes Plaintiff to serve expedited discovery by e-mail, with Homelex required to respond within three (3) business days. These are account-wide, cross-platform directives that reach sales, advertising, data, and cash flow—well beyond a single SKU.

Hallmark also asks that the TRO relief "remain in place through the pendency of this litigation," converting emergency restraints into an open-ended business shutdown. That is not a narrow, SKU-specific remedy; it is, in practical effect, a directive to shut down the entire business while simultaneously freezing or diverting access to funds and forcing accelerated discovery obligations.

12

Homelex has already incurred substantial attorney's fees and expert costs to litigate and defend its design, and it has no intention of walking away; but absent a stay, the proposed injunction's platform-level strikes, ad takedowns, and account-wide asset restraints will inflict structural damage to goodwill, rankings, and customer relationships that cannot be unwound by a later monetary award.

Concrete harms are already occurring and will accelerate absent a stay: (1) copyright-related flags and strike counts reduce search placement and jeopardize account standing; (2) open purchase orders and distributor negotiations are being cancelled, with counterparties indicating a shift to substitute suppliers; (3) the imminent seasonal sales window means lost shelf space converts to permanently ceded share and stranded inventory; and (4) public delistings signal alleged misconduct and erode trust. These are precisely the kinds of nonrecoverable competitive injuries that warrant interim relief. See *Roland*, 749 F.2d at 386; *Life Spine*, 8 F.4th at 545–46; *Ty*, 237 F.3d at 902.

Where serious appellate questions exist about the governing evidentiary approach, continuing an injunction that inflicts irreparable, account-wide harm is unwarranted. See *Nken*, 556 U.S. at 434. Moreover, any incremental harm to Plaintiff is monetizable and can be fully protected through bond, escrow, or record-preservation measures—"less drastic" safeguards that minimize the costs of being mistaken while the Seventh Circuit reviews the merits. See *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992).

**E. Plaintiff Will Not Be Substantially Harmed—and Targeted Conditions Protect Plaintiff's Interests**

Federal courts have broad discretion to suspend or tailor injunctive relief pending appeal on terms that secure the opposing party's rights. See Fed. R. Civ. P. 62(d); FRAP 8(a)(2)(E); *Nken*,

13

556 U.S. at 434 (first two factors are "the most critical," but all are balanced). The Seventh Circuit applies a sliding scale: when an appeal shows some—though not necessarily great—merit, strong showings on the harms justify interim relief. *Cavel,* 500 F.3d at 546–47. And courts should structure relief to minimize the costs of being mistaken while review proceeds. *Abbott*, 971 F.2d at 12.

Here, any incremental harm to Plaintiff from a temporary continuation of sales is both readily monetizable and fully protectable through narrowly tailored safeguards. These include: (i) a running accounting of sales activity; (ii) a bond or escrow in an amount set by the Court; and (iii) preservation of detailed sales and platform metrics records. Such mechanisms are more than adequate to prevent prejudice and ensure that Plaintiff's rights are protected during appellate review. Under Seventh Circuit precedent, "[h]arm cannot be considered irreparable if it can be fully rectified in a final judgment." *Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1024 (7th Cir. 2017). Likewise, the timing of a monetary remedy—i.e., "money now versus money later"—does not create irreparable harm. *See People Who Care v. Rockford Bd. of Educ.*, 921 F.2d 132, 135 (7th Cir. 1991).

### F. The Public Interest Favors a Stay

The public interest favors a short, conditioned stay that preserves the status quo while the Seventh Circuit considers serious procedural issues, including whether the categorical exclusion of defense expert declarations without a *David* analysis was improper. Courts have emphasized that Rule 62 authority should be exercised to preserve the status quo and protect the integrity of appellate review. For example, in *Duthie v. Matria Healthcare, Inc.*, the Northern District of Illinois observed that "the district court should only take action … in an effort to maintain the status quo of the parties pending the outcome of the appeal." 543 F. Supp. 2d 958, 960 (N.D. Ill.

14

2008). *City of Chicago*, 321 F. Supp. 3d at 855 (N.D. Ill. 2018) (staying part of nationwide injunction pending appellate review).

Courts relax evidentiary rules at the PI stage and may rely on affidavits and declarations; tailored cures should be preferred over categorical exclusion. *Ty*, 132 F.3d at 1172 ("affidavits … are fully admissible in … preliminary-injunction proceedings"); *City of Evanston*, 381 F. Supp. 3d at 949 ("evidentiary rules are relaxed … substantial discretion to hear and receive evidence"). A short, bonded stay likewise minimizes the costs of error by avoiding potentially irreversible market effects while fully protecting the opponent via a Rule 65(c) bond; courts must also consider intermediate, less drastic forms of relief. *Abbott Labs*, 971 F.2d at 12 (criticizing failure to consider "intermediate relief" and noting harms coverable by a Rule 65(c) bond).

## VI. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court stay enforcement of the July 23, 2025, preliminary injunction (Dkt. 91) pending appeal pursuant to Fed. R. Civ. P. 62(d) and FRAP 8(a). Defendant stands ready to post security and otherwise comply with any conditions the Court deems appropriate.

Date: July 28, 2025

/s/ Ruoting Men
Ruoting Men, Esq.
GLACIER LAW LLP
41 Madison Avenue, Suite 2529
New York, NY 10010
ruoting.men@glacier.law
212-729-5049

***Attorney for Defendant***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this July 28, 2025, I electronically filed the foregoing file with the Clerk of Court using the CM/ECF system, and service was perfected on all counsel of record and interested parties through this system, which will deliver a true and correct copy of the foregoing documents via CM/ECF.

/s/ Ruoting Men
Ruoting Men, Esq.
